FILED ___  LODGED X
RECEIVED ___  COPY ___

JUL 2 1 2016

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _SMM_____ DEPUTY

1  JOHN S. LEONARDO
   United States Attorney
2  District of Arizona

3  MONICA B. KLAPPER
   Arizona State Bar No. 013755
4  Monica.Klapper@usdoj.gov

5  PETER SEXTON
   Arizona State Bar No. 011089
6  Peter.Sexton@usdoj.gov

7  Assistant United States Attorneys
   Two Renaissance Square
8  40 N. Central Ave., Suite 1200
   Phoenix, Arizona  85004
9  Telephone:  602-514-7500
   Attorneys for Plaintiff

10
                    IN THE UNITED STATES DISTRICT COURT
11
                      FOR THE DISTRICT OF ARIZONA
12

13  United States of America,                CR- 15-1118-05-PHX-SPL CJZB

14                    Plaintiff,

15       vs.                                  **PLEA AGREEMENT**

16
    Sylvia Torres,
17
                    Defendant.
18

19       The United States and Defendant Sylvia Torres agree to dispose of this matter on

20  the following terms and conditions:

21  **1.    PLEA**

22       Defendant will plead guilty to the information, which alleges one count of making

23  a false statement, a class D felony in violation of 18 U.S.C. § 1001.

24  **2.    MAXIMUM PENALTIES**

25       a.    A violation of 18 U.S.C. § 1001 is punishable by a maximum fine of

26  $250,000, a maximum term of imprisonment of 5 years, or both, and a term of supervised

27  release of 3 years.  The maximum term of probation is 5 years.

28       b.    According to the U.S. Sentencing Guidelines issued pursuant to the

Sentencing Reform Act of 1984, the Court shall order Defendant to:

(1)   make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

(2)   pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

(3)   serve a term of supervised release when required by statute or when a sentence of imprisonment of more than 1 year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

(4)   pay upon conviction a $100 special assessment for each count to which Defendant pleads guilty pursuant to 18 U.S.C. § 3013.

c.    The Court is required to consider the Sentencing Guidelines in determining Defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crimes of conviction, unless there are stipulations to the contrary that the Court accepts.

**3.    AGREEMENTS REGARDING SENTENCING**

a.    Restitution. As restitution, Defendant agrees to disgorge $104,300 that she received from investor funds that were collected by Co-Defendants for the development of Lots 3, 5, 46 and 47 in Mexico.

b.    Assets and Financial Responsibility. Defendant shall make a full accounting of all assets in which Defendant has any legal or equitable interest. Defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). Defendant also expressly authorizes the United States Attorney's Office to immediately obtain a credit report to evaluate Defendant's ability to satisfy any financial obligation imposed by the Court. Defendant also shall make full

disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of Defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose.  Finally, Defendant shall participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

       c.     Acceptance of Responsibility.   If Defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding Defendant's commission of the offense, and if Defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G.§ 3E1.1(a).  If Defendant has an offense level of 16 or more, the United States will recommend an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

**4.**     **COOPERATION AGREEMENT**

       a.     Cooperation Required

       1.     If requested by the United States, Defendant shall meet with representatives of the United States at any reasonable time and place and, in such meetings, shall:  (i) waive the Fifth Amendment privilege against self-incrimination; (ii) answer all questions asked about any topic whatsoever; and (iii) provide full and complete information about the topics discussed in each interview, if necessary by volunteering information about which no questions are asked.

       2.     If requested by the United States, Defendant shall deliver to the United States any documents and other items to which Defendant has access.

       3.     If requested by the United States, Defendant shall testify in any proceeding at any time and place and, when testifying, shall not invoke the Fifth Amendment privilege against self-incrimination.

       4.     All information, evidence, and testimony provided by Defendant

pursuant to this section, on any topic whatsoever, shall be truthful, honest, candid, and complete with no knowing and material omissions or false statements. Defendant shall not attempt to either protect or falsely implicate any person or entity through false information or omission.

5.  The United States Attorney's Office for the District of Arizona shall not use directly against Defendant in any criminal proceeding (other than a criminal forfeiture proceeding) any evidence provided by Defendant pursuant to this agreement. Additionally, pursuant to U.S.S.G. § 1B1.8, the Court shall not use such evidence in determining Defendant's advisory Sentencing Guidelines range. For the avoidance of doubt, however, the United States may (i) make derivative use of evidence provided by Defendant pursuant to this Addendum, and (ii) use such evidence directly against Defendant in  any criminal forfeiture proceeding and any administrative or civil proceeding.

6.  Defendant shall work undercover only under the direct supervision of law enforcement officers and with the prior approval of the Court.

7.  If Defendant discloses or reveals to any third party the fact that Defendant is cooperating, or the nature of any information that has been obtained by the United States, Defendant shall notify the United States as soon as possible of any such disclosures.

8.  Defendant shall notify the United States as soon as possible of any interactions or contacts with any subject or target of any ongoing criminal investigation, any criminal defendant, or their respective counsel or associates.

9.  Defendant shall not violate any local, state, federal or foreign laws.

b.  Additional Agreements Regarding Sentencing

1.  At the request of the United States, Defendant shall request sentencing be deferred until his cooperation is complete.

2.  Prior to Defendant's sentencing, the United States shall consider moving the Court to depart downward from the Sentencing Guidelines, and if applicable

impose a sentence below the level established by law as the minimum sentence, pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e).

        3.     At sentencing and any other appropriate time, the United States shall bring the nature and extent Defendant's cooperation to the attention of the Court and/or the Federal Bureau of Prisons.

        c.     Breach of the Plea Agreement

        1.     If Defendant fails to comply with any of the obligations or promises set forth in the Plea Agreement or this Addendum, the United States may:

        (1)     in its sole and absolute discretion, declare any provision of the Plea Agreement null and void, without giving Defendant any right or option to withdraw from the Plea Agreement or the plea of guilty;

        (2)     recommend any sentence, up to and including the statutory maximum sentence;

        (3)     prosecute Defendant, or reinstitute prosecution of Defendant, for any and all crimes committed by Defendant, notwithstanding the statute of limitations, the Speedy Trial Act, and any constitutional restrictions in bringing later proceedings;

        (4)     use in any manner, and in any proceeding, any evidence provided by Defendant; and

        (5)     advise the Bureau of Prisons that Defendant is no longer a cooperating witness, and recommend re-designation of Defendant to a higher custodial level.

        2.     If there is a dispute regarding the obligations of the parties under this agreement, the United States District Court shall determine whether the United States or Defendant has failed to comply with this agreement including whether Defendant has been truthful.

## 5.    AGREEMENT TO DISMISS OR NOT TO PROSECUTE

        a.     Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A), the United

States, at the time of sentencing, shall dismiss the indictment counts against Defendant.

b.     This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

**6.     COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

a.     If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give Defendant the opportunity to withdraw the guilty plea in accordance with Federal Rule of Criminal Procedure 11(c)(5).

b.     If Defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute Defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated.   In such event, Defendant waives any and all objections, motions, and defenses based upon the statute of limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings.   Defendant understands that any statements made at the time of Defendant's change of plea or sentencing may be used against Defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Federal Rule of Evidence 410.

**7.     WAIVER OF DEFENSES AND APPEAL RIGHTS**

Defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that Defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of Defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c).   This waiver shall result in the dismissal of any

appeal, collateral attack, or other motion Defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

**8.   DISCLOSURE OF INFORMATION**

   a.   The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

   b.   Any information, statements, documents, and evidence that Defendant provides to the United States pursuant to this agreement may be used against Defendant at any time.

   c.   Defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

      (1)   criminal convictions, history of drug abuse, and mental illness; and

      (2)   financial information, including present financial assets or liabilities that relate to the ability of Defendant to pay a fine or restitution.

**9.   FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

   a.   Nothing in this agreement shall be construed to protect Defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property Defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum

1    payments and shall not be a limitation on the methods available to the United States to

2    enforce the judgment.

3           b.      Defendant agrees to forfeit, and hereby forfeits, all interest in any asset that

4    Defendant owns or over which Defendant exercises control, directly or indirectly, as well

5    as any property that is traceable to, derived from, fungible with, or a substitute for

6    property that constitutes the proceeds of his offense, or which was used to facilitate the

7    commission of his offense.  Defendant further agrees to assist the United States in any

8    manner requested in an effort to sell or manage any such property.

9           c.      Defendant further agrees to waive all interest in any such asset in any

10   administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal.

11   Defendant agrees to consent to the entry of orders of forfeiture for such property and

12   waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding

13   notice of the forfeiture in the charging instrument, announcement of the forfeiture at

14   sentencing, and incorporation of the forfeiture in the judgment.  Defendant further

15   understands and agrees that forfeiture of the assets is appropriate and in accordance with

16   the applicable forfeiture statutes, which may include 8 U.S.C. § 1324(b), 18 U.S.C. §§

17   924(d), 981, 982 and 2253, 21 U.S.C. §§ 853 and 881, and 28 U.S.C. § 2461(c).

18          d.      Forfeiture of Defendant's assets shall not be treated as satisfaction of any

19   fine, restitution, cost of imprisonment, or any other penalty this court may impose upon

20   the defendant in addition to forfeiture.  This agreement does not preclude the United

21   States from instituting any civil or administrative forfeiture proceedings as may be

22   appropriate now or in the future.

23          e.      Defendant agrees to waive all constitutional and statutory challenges in any

24   manner (including direct appeal, habeas corpus, double jeopardy or any other means) to

25   any forfeiture imposed as a result of this indictment or any pending or completed

26   administrative or civil forfeiture actions based upon the course of conduct that provides

27   the factual basis for the forfeiture, including that the forfeiture constitutes an excessive

28   fine or punishment. Defendant agrees to take all steps as requested by the United States

to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. Defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct, property facilitating illegal conduct, and substitute assets for property otherwise subject to forfeiture, and that no other person or entity has a legitimate claim to these items listed.

f.      Defendant agrees not to file a claim to any of the listed property in any civil proceeding, administrative or judicial, which may be initiated. Defendant further agrees that he/she will not contest civil, administrative or judicial forfeiture of the listed property. Defendant agrees to waive his right to notice of any forfeiture proceeding involving this property, and agrees not to file a claim or assist others in filing a claim in that forfeiture proceeding.

g.      The United States reserves its right to proceed against any remaining assets not identified either in this agreement or in any civil actions which are being resolved along with this plea of guilty, including any property in which Defendant has any interest or control, if said assets, real or personal, tangible or intangible were involved in the offenses.

h.      Defendant hereby waives, and agrees to hold the government and its agents and employees harmless from any and all claims whatsoever in connection with the seizure, forfeiture, and disposal of the property described above. Without limitation, Defendant understands and agrees that by virtue of this plea of guilty, Defendant will waive any rights or cause of action that the defendant might otherwise have had to claim that he is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related civil forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

## 10.   ELEMENTS

### False Statement, 18 U.S.C. § 1001

On or about May 6, 2015, in the District of Arizona and elsewhere:

1.      Defendant made a statement that was false, fictitious or fraudulent;

-9-

2.      The statement was made in a matter within the jurisdiction of the executive branch of the U.S. government; to wit, the Federal Bureau of Investigation;

3.      Defendant acted willfully; that is, with the knowledge that the statement was untrue and that her conduct was unlawful; and

4.      The statement was material; that is, it had a tendency to influence or was capable of influencing, the agency's decisions or activities.

## 11.   FACTUAL BASIS

Defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

On May 6, 2015, I was interviewed by special agents of the FBI concerning the fraud allegations in the pending indictment.  During the interview, I made several materially false statements, or omitted material information, knowing that I was doing so and that it was illegal to do so.  The materially false statements include, but are not limited to, the following:

• **FBI Interview:**  In the 2015 interview, I told the FBI that I had not disclosed the fact of the interview to Co-Defendant James Stevens.  In reality, I had informed him of the interview a week before it took place.

• **Lot 3 in Mexico:**  In the 2015 interview, I told the FBI that Stevens and I had purchased Lot 3 in Mexico with Stevens' money in 2006, learned in 2012 or 2013 that there were title problems with the Lot, and thereafter was actively working with an attorney to clear up the title problems.

In reality, I learned about the title problems with Lot 3 in 2008 or 2009, prior to the time funds were solicited from investors by Co-Defendants based on claims of ownership of Lot 3.  In 2013, I signed a bogus agreement reflecting the purported sale of Lot 3 to Co-Defendant Mogler, and the agreement was backdated to April 10, 2010, so it appeared that the sale took place prior to soliciting investment funds based on ownership of Lot 3.  No money changed hands, and no transfer occurred, because I never owned the

1  land.

*[handwritten margin note: MBK DFB S.T. had a contractor]*

2  • **Lot 5 in Mexico:** In the 2015 interview, I told the FBI that I ~~was an owner of~~

3  Lot 5 in Mexico, having purchased it 2007, and that it was used to solicit approximately

4  $1 million in investor funds before the original owner appeared to have sold it again,

5  creating problems with the title to Lot 5.

6          In reality, prior to the 2007 purchase, Co-Defendant James Stevens and I learned

7  about the title problems regarding the property (including the existence of three liens on

8  the property), and we informed Co-Defendants Mogler and Hinkeldey of those problems

9  in the spring of 2007. My understanding is that the goal was to purchase Lot 5 for resale,

10  and not for development. By 2008, I understood that investor funds were being solicited

11  by Co-Defendants Mogler and Hinkeldey for the development of Lot 5, based on false

12  claims of ownership of the property.

13          • **Lots 46 & 47 in Mexico:**   In the 2015 interview, I also provided false

14  information to the FBI about the Mar de Cortez project in Mexico, involving Lots 46 and

15  47.   I claimed that I could not recall why Oscar Hernandez was the owner of Mar De

16  Cortez, LLC, and was the sole signer on the Mar de Cortez bank account. I also claimed

17  not to have any information about the individuals named in the Mar de Cortez Private

18  Placement Memoranda (PPM).

19          In reality, Oscar Hernandez was the nominal owner of Mar de Cortez, LLC, and

20  the corresponding bank account because Co-Defendant Stevens and I did not want our

21  names used for these purposes. We listed Oscar Hernandez as the project manager in the

22  PPMs even though he was not at all involved in the project and was not qualified for the

23  position. We similarly used the names of several others, who also were not involved in

24  the projects, were not qualified for the designated position, and did not even know their

25  names were being used:  Marco Antonio Valadez C., Luis A., Ing Oscar B., Donald S.,

26  Rigoberto C., Lic Elimilic F., Rafael Lopez O., Sophia M., and Julian Rios S.

27          Defendant shall swear under oath to the accuracy of this statement and, if

28  Defendant should be called upon to testify about this matter in the future, any intentional

- 11 -

material inconsistencies in Defendant's testimony may subject Defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

**APPROVAL AND ACCEPTANCE OF THE DEFENDANT**

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt. I also waive any statute of limitations defense that I may have to any act that is included in the indictment or the factual basis to this agreement.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be

required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

7-21-16
Date

Sylvia Torres
Defendant

## APPROVAL OF DEFENSE COUNSEL

I have discussed this case and the plea agreement with my client in detail and have advised Defendant of all matters within the scope of Federal Rule of Criminal Procedure 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to Defendant by the United States or any of its representatives that are not contained in this

written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Federal Rule of Criminal Procedure 11.

July 21, 2016
_____
Date

_____
Doug Behm
Attorney for Defendant

## APPROVAL OF THE UNITED STATES

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

JOHN S. LEONARDO
United States Attorney
District of Arizona

July 21, 2016
_____
Date

_____
MONICA B. KLAPPER
PETER SEXTON
Assistant U.S. Attorney

## ACCEPTANCE BY THE COURT

_____
Date

_____
Honorable Steven P. Logan
United States District Judge

- 14 -